**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| EXXON MOBIL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | 4:10-CV-02386 (LHR) |
| ) | 4:11-CV-01814 (LHR) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
TO EXCLUDE OPINION TESTIMONY BY A.J. GRAVEL**

The United States moves to exclude opinion testimony by Mr. A.J. Gravel on historical or technical issues. Mr. Gravel has been retained by Exxon to testify to:

> . . . subjects including . . . the Government's wartime authorities and controls, the historical involvement and control of the Government in the operations at the Baytown and Baton Rouge Facilities during the wartime period, the Government-owned plants' operation and integration with the refineries at both Facilities during the wartime period, the Federal nexus to the waste units and areas of contamination that are the subject of Exxon's response actions at both Facilities, the PRP investigation costs, and other topics raised in his expert report, rebuttal report, supplemental report and depositions.

Joint Pretrial Order; Plaintiff's Witness List; Item 5 (copy reproduced at Exhibit 1). [1]

Mr. Gravel does not qualify as a historical or technical expert under the standard set by Federal Rule of Evidence 702. This Rule requires that Exxon must show that Mr. Gravel "is qualified as an expert by knowledge, skill, experience, training, or education" in these fields. *See*

---

[1] Exxon also stated that Mr. Gravel would testify concerning "the sources of and compilation of the historical documents in Exxon's trial exhibits." Neither party is challenging the provenance or authenticity of historical documents; thus, this aspect of his proposed testimony is irrelevant.

*Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc) (noting that burden is on the testimony's proponent to show qualification). The opinions of a witness not qualified as an expert will not help the trier of fact as required by Rule 702. *See id.* at 275 (noting that expert testimony must be both relevant and reliable (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-90 (1993)).

For the reasons set forth below, Exxon cannot establish that Mr. Gravel is qualified as a historical or technical expert. Therefore, the Court should not allow Mr. Gravel to provide opinion testimony on either topic.[2]

## ARGUMENT

### I. MR. GRAVEL IS NOT AN EXPERT HISTORIAN

#### A. Mr. Gravel Was Not Educated or Trained as a Historian

Mr. Gravel testified that he has a Bachelor's degree in Health Sciences and a Master's degree in International Business Management. He has not taken any classes in American history, forensic history, government procurement policies, or any aspects of government-business relations during WWII. Ex. 2, Gravel Dep. Vol. I at 17:19-18:20. He did not author any research papers on the role of the United States during WWII in college or graduate school, or serve as a

---

[2] The United States previously argued that the Court should not rely on Mr. Gravel's opinion testimony in deciding the parties' motions for summary judgment. United States' Memorandum In Opposition To Exxon Mobil Corporation's Motions for Partial Summary Judgment, ECF # 118 at 66-68 (Dec. 20, 2013). The Court determined:

> Considering Gravel's testimony and report does not alter the conclusion that the United States did not operate the refineries. Nor is Gravel's testimony necessary to find and conclude that the United States did operate the plants.

Therefore, the Court did not decide the question of whether Mr. Gravel was qualified to be an expert historian. *Exxon Mobil Corp. v. United States*, 108 F. Supp. 3d 486, 530 n.33 (S.D. Tex. 2015).

research assistant for a history professor. *Id*. at 21:15-22:14. He has not published any articles in peer-reviewed journals, *see* Ex.2, Gravel Rep., and has not attended any lectures, seminars, or conferences examining the role of the United States during the Korean War. *Id*. at 26:3-6. He has spoken at CLE events for lawyers and made presentations to law firms, but those speaking engagements focused on "research and how the research methodology takes place"— not the substantive history of WWII and the Korean War. *Id*. at 27:20-28:14.

Mr. Gravel therefore lacks the training and education that an expert historian must have to be qualified to offer opinion testimony, particularly testimony on the United States' involvement during WWII and the Korean War. *Compare, e.g., Walden v. City of Chicago*, 755 F. Supp. 2d 942, 948-51 (N.D. Ill. 2010) (finding history PhD candidate with a Master's degree in history and undergraduate degree in anthropology qualified to testify as expert historian because of his undergraduate and graduate degrees, his experience as teaching assistant and instructor, and his research and writing on related topics); *Gill v. Arab Bank, Plc*., 893 F. Supp. 2d 523, 542 (E.D.N.Y. 2012) (finding historian with a Master's degree in history qualified to testify as expert because his "background and professional experience qualify as 'specialized knowledge' gained through 'experience, training, or education'" and because he authored books that were "the products of extensive study of [the topic] through research of news and academic articles").

Because Mr. Gravel lacks training and education in history, his stated opinions are not likely to aid the Court in understanding the history of the WWII and Korean Wars. More specifically, he has no specialized insight into the *context* in which the events recorded in the documentation the parties have unearthed occurred. *See United States v. Newmont USA Ltd*., Case No. CV-05-020-JLQ, 2007 WL 4856859 (E.D. Wash. Nov. 16, 2007) (explaining that

historian's training and education were what made his opinions on context of historical events helpful to the court). In *Newmont USA*, the court explained:

> This case demands the evaluation of events which occurred decades ago. The fact-finder must necessarily rely on the testimonial narratives of other people . . . Historians are trained to recover "facts" and, through selecting certain facts from the universe of available facts, construct narratives that explain a historical issue. Through the application of his expertise as a historian Dr. Quivik may be able to assist the court. . . .

*Id*. at *3. Mr. Gravel lacks the training to similarly assist this Court in understanding historical documents and the context in which they were written.

For example, in his declaration in support of Exxon's initial motion for summary judgment, Mr. Gravel stated:

> [t]he nation's industries were well aware of the implications of the President's seizure powers, as they were much publicized in 1940 as Congress debated passage of the Selective Service and Training Act. The national press commonly referred to these powers as "drafting" industry for war work. It was clear that any threat to maximum production of war products, whether arising from labor unrest or from management's refusal to accept war orders, could result in the Federal government's seizure of one or more of a company's plants.

Exxon Mot. Ex. 1 ¶ 7 (Attached here as Exhibit 3). Mr. Gravel, however, has not even taken any courses concerning American history in general or World War II in particular, let alone done academic research or published on these topics. *See* Ex. 2, Gravel Dep. Vol. I at 197:11-20, 198:15-199:17, 313:16-314:9, 339:4-22. He thus lacks the expertise to opine that industry during WWII "was aware of the implications of the President's seizure power" or "that any threat to maximum production of war products" could result in seizure. To the extent that Mr. Gravel is simply summarizing the content of historical documents, he adds nothing to the Court's own assessment of the record; to the extent that he is opining concerning the meaning or context of those documents, he lacks the necessary expertise and his testimony should be excluded. *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005)

(excluding expert's testimony where it "simply rehash[ed] otherwise admissible evidence" and "include[d] [his] own speculation regarding the state of mind and motivations of certain parties who were involved in the relevant transaction, often without citation to any record evidence").

Mr Gravel claims that he is a "forensic historian," and that he has the appropriate training and expertise to testify in this capacity. *See* Ex. 2, Gravel Dep. Vol. I at 18:17-19-:18; *id*. at 19:5-6 ("People that do [forensic history] are trained out in the field."). More specifically, he asserts that a "forensic historian" "uses historical methodologies to obtain information that's useful in – in forming decision-making in both litigation and settlement context," *id*. at 19:20-20:2, while a "public historian" "gets an academic degree, and then applies historical methodologies to public history questions." *Id*. at 21:12-14. Mr. Gravel has not, however, demonstrated that "forensic" history is a recognized and distinct field of expertise, or that an academically trained historian would not have, or could not readily acquire, the research skills he describes. Nor has he demonstrated that a "forensic" historian would not require the same educational experience or training as any historian seeking to qualify as an expert witness.

Mr. Gravel has testified that the difference between "forensic" and "academic" historians is that the forensic variety works for a specific client needing to answer historical questions concerning a specific problem. Ex. 2, Gravel Dep. Vol. I at 20:10-21-8. On the contrary, academic historians are commonly hired to opine about specific matters, as in *Newmont USA* where the Court concluded that Dr. Quivik's opinions were useful to the court because he had the education and training to identify the necessary facts and to "construct narratives that explain a historical issue." *Newmont USA Ltd.*, 2007 WL 4856859, at *3.

### B.    Mr. Gravel's Experience Does Not Qualify Him as an Expert Historian.

Rule 702 recognizes that a witness may be qualified as an expert based on experience rather than academic credentials. As the Advisory Committee observed, "*[i]n certain fields*, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702, advisory committee's note, 2000 Amends (emphasis added). *See also Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1110 (5th Cir. 1991) (FRE 702 allows for expert testimony "by so-called skilled witnesses, whose experiences permit them to testify with authority on a given topic."). In an academic discipline such as history, however, there is no basis to *assume* that experience will be the equivalent of an education. Mr. Gravel himself implicitly conceded the importance of education when he testified that the "core group" of historians working for him all had history degrees, either bachelors, masters, or doctorate. Ex. 1 Gravel Dep. Vol. I at 47:1-48:15. These individuals were all educated as historians and then, according to Mr. Gravel, became "practicing forensic historians" when they came to work for him. *Id*. The fact that Mr. Gravel is the only member of his core group without a degree in history suggests that he recognizes the importance of an academic background even for a "forensic" historian.

While a person can learn how to research and assemble facts while working in any number of jobs, the ultimate task of an expert historian, as explained in *Newmont USA Ltd.*, 2007 WL 4856859, at *3, is to "*construct narratives* that explain a historical issue" (emphasis added). This requires the witness to explain facts in light of the broader historical context. The credentials provided by an academic degree support the reliability of the narrative constructed. Mr. Gravel has testified that he developed his expertise in the course of his employment by researching and analyzing specific questions from the past posed by different clients over the

6

years. Ex. 2, Gravel Dep. Vol. I at 86:15-88:7. He characterized this as being "trained out in the field." *Id*. at 19:1-6. This informal preparation leaves the Court without any effective guideposts to evaluate Mr. Gravel's ability to construct a reliable narrative as described in *Newmont*.

For all of the reasons discussed above, Mr. Gravel is not qualified to testify as an expert historian, and should not be allowed to give opinion evidence on any historical topic.

## II. MR. GRAVEL LACKS THE EXPERTISE NECESSARY TO TESTIFY AS AN EXPERT AS TO SCIENTIFIC OR ENGINEERING ISSUES

In his expert report, Mr. Gravel also opines on such topics as the likely source of the plume of contamination under the Baytown Ordnance Works. Ex. 4. Report of A.J. Gravel, 121 (June 18, 2012). His opinion is based on information regarding the locations of certain operations. *Id*. at 121-22. Even assuming that his statements regarding the nature and location of operations during WWII are supported by the documentary evidence, Mr. Gravel has not identified any education or experience that would enable him to qualify as an expert on the fate and transport of waste from soil to groundwater or on the source of a groundwater contamination plume. Such a topic would require an expertise in a field such as environmental engineering or hydrogeology. *See Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 119 (D.D.C. 2014); *New Mexico v. General Elec. Co.*, 335 F. Supp. 2d 1266, 1281 (D.N.M. 2004); *Kelley v. Thomas Solvent Co.*, 727 F. Supp. 1532, 1549 (W.D.Mich.1989). Nothing Mr. Gravel's deposition testimony or report would enable Exxon to establish that Mr. Gravel should be allowed to give opinion evidence on any topic that would require an expertise in science or engineering.

## CONCLUSION

For these reasons, under rule 702, Mr. Gravel should not be permitted to testify as an expert in historical analysis or on topics requiring scientific or technical expertise.

7

Respectfully submitted,


_____/s/ Michael D. Rowe_____
Michael D. Rowe (Attorney-in-Charge)
Sue Chen
Mark Walters
Brian H. Lynk
Andrew Corimski

*Trial Attorneys*
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3144
michael.rowe@usdoj.gov

Jimmy A. Rodriguez

*Assistant United States Attorney*
Southern District No. 572175
Texas Bar No. 24037378
1000 Louisiana, Suite 2300
Houston, TX 77002
(717) 567-9532
jimmy.rodriguez2@usdoj.gov

*Counsel for Defendant United States*

## CERTIFICATE OF SERVICE

I certify that a copy of the United States' Motion In Limine To Exclude Opinion Testimony By A.J. Gravel was served through the Court's ECF system upon all counsel of record on February 11, 2020.